THE STATE, THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, RELATOR, v. VIVIAN M. LEWIS, COMMISSIONER OF BANKING AND INSURANCE, AND PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Argued November 9, 1911—Decided December 28, 1911.

By the act of ascertaining and setting aside annually as a separate fund the amount of surplus to which deferred dividend policies as a class are entitled, and the appropriation by law of such fund to such use and no other, as provided by chapter 71 of the laws of 1907 (*Pamph. L., p.* 132), a fixed liability to that class of policies is created, which forms an essential part of the total policy values required to be computed by the commissioner of banking and insurance, and to the amount of which the company's assets are exempt from taxation together with the general liabilities on policies, pursuant to the taxing act of 1906. *Pamph. L., p.* 418.

On rule to show cause why writ of *mandamus* should not issue, commanding the commissioner of banking and insurance to correct a valuation officially made by him of the outstanding policies of the Prudential Insurance Company of America by striking out a certain item and reducing the total valuation by the amount of such item.

Before Justices GARRISON, PARKER and BERGEN.

For the relator, *Herbert Boggs.*

For the commissioner of banking and insurance, *Edmund Wilson,* attorney-general.

For the Prudential Insurance Company, *Richard V. Lindabury, Carl Lentz* and *Edward D. Duffield.*

The opinion of the court was delivered by

PARKER, J. This application brings up in concrete form the question whether the Prudential Insurance Company of

America is taxable in the city of Newark upon such part of its assets as constitutes what is known as the fund apportioned to deferred dividend policies as a class pursuant to chapter 71 of the laws of 1907. *Pamph. L., p.* 132. That question was dealt with in the recent case of *Newark* v. *Board of Equalization of Taxes,* 51 *Vroom* 258, affirmed by the Court of Errors and Appeals in 52 *Id.* 416, but was not finally set at rest. In this court it was held that the act of 1907 made no change in the liability or otherwise of this fund to taxation as compared with its *status* prior to 1907, and that it must be assumed that the commissioner had included it in his general computation of liabilities on policies. In the Court of Errors and Appeals it was held (*ubi supra*) that no new liability was created by the annual ascertainment and apportionment of this fund in the manner provided by the act of 1907, but that the act simply required that to be made definite which was theretofore uncertain; that the amount ascertained and apportioned to deferred dividend policies pursuant to the act of 1907 was a "liability on policies;" but that, assuming that the commissioner in his computation of the total value of policies had failed to include the amount in question when he should have done so, his computation was conclusive on the taxing officers and could be questioned only by direct attack in this court. This disposed of the tax for 1909, but left it open for the commissioner of banking and insurance to decide in the future whether to include the amount of the deferred dividend fund, in whole or part, in his annual valuation. This question was taken up by him in making his valuation for 1911. In his statement of that valuation the form and plan of computation of policy values are the same as in prior statements and lead up to a total of $174,421,973, which corresponds to the total valuation of $132,138,211 returned in the report for 1909, mentioned in the former decision, the difference representing the growth of the company's business; but instead of calling this "total net reserve value," as in the former report, he designates it thus:

"Total net value (excluding amount apportioned to deferred dividend policies), $174,421,973 00"
And adds this item:

"Amount apportioned to deferred dividend policies as a class pursuant to chapter 71, laws of 1907, and held awaiting apportionment between policyholders.....    23,441,441 15

"Grand total ................... $197,863,414 15"

Pursuant to the Taxing act of 1906, page 418, quoted in the opinion of the Court of Errors and Appeals already cited, the company in making return to the taxing authorities returned this "grand total" as the liabilities on policies, and claimed exemption for all of it. The assessors conceded that the item of $174,421,973 should be allowed, but declined to allow the amount apportioned to deferred dividend policies, and the city now applies for a *mandamus* (to quote the language of the rule) :

"Commanding and enjoining the said Vivian M. Lewis, Commissioner of Banking and Insurance, that he forthwith correct his valuation of the outstanding policies of the Prudential Insurance Company of America, as of December thirty-first, A. D. 1910, and his certificate thereof, by striking therefrom the item of $23,441,441.15 and the statement 'Amount apportioned to deferred dividend policies as a class, pursuant to chapter 71, laws of 1907, and held awaiting apportionment between policyholders' and the words and figures 'Grand total, $197,863,441.15,' so that the same, when corrected, shall clearly show the total value of the outstanding policies of said Prudential Insurance Company of America, on December 31, 1910, to be the sum of $174,421,973.00."

We are by no means clear that *mandamus* is the proper remedy in such a case as this, and do not wish to be understood as sanctioning a resort to it for the relief desired, which, it will be observed, is not to compel a public officer to do something that he is by law required to do and has failed or refused to do, but to compel him to do in a different way what he has

already done. *Certiorari* would seem to be the proper remedy. But both parties have fully argued the merits and desire a decision thereon, and neither party wishes to raise a question of procedure; so we proceed to a consideration of the main question, which is now squarely presented, and is, whether the amount apportioned to deferred dividend policies as a class, with the accretions thereof, is an element to be included in the liability on policies constituting part of the tax exemption allowed by the statute of 1906.

To clear the way for this question a short *résumé* of the statutory method of taxation and exemption will not be out of place, though the ground has largely been gone over in the case of *Newark* v. *Board of Equalization of Taxes, ubi supra.* The requirements of the statute are these:

1. Life insurance companies are to be assessed and taxed upon the full amount of value of their property, exclusive of real estate in this state, and of securities to the value of $500,-000, deducting from such amount or value the amount of their debts and liabilities. *Pamph. L.* 1906, *p.* 418.

2. To ascertain such debts and liabilities a statement is to be made by the company to the taxing officer annually as of December 31st preceding the same. *Ib.*

3. In stating the liabilities on policies the *basis* of such statement shall be the *value* of such policies on December 31st, and not the gross amount insured thereby. *Ib.*

4. Such value shall be according to the computation of the same by the commissioner of banking and insurance by such standard of valuation as may be adopted and used by him at the time such computation shall be made according to law. *Ib.*

5. In computing the policy values the commissioner follows the provisions of section 24 of the Insurance act of 1902 (*Pamph. L., p.* 407), as amended in 1907 (*Pamph. L., p.* 144), but this act does not prescribe or contain any intimation whether or not the element of a specific reserve to meet deferred dividends is to be taken into account in calculating policy values. For present purposes, therefore, section 24 in its present form seems to be unimportant. Viewing the taxa-

tion of a life insurance company in the chronological order of the steps required to be taken we must reverse the above order (omitting for the present No. 5) and we have—

. 1. Computation of value of the policies by the commissioner.

2. This is the *basis* of the liabilities on policies reported by the company to the assessor; and the Court of Errors and Appeals has held that it *is* itself the item of "liabilities on policies." *Newark* v. *Board of Equalization, ubi supra.*

3, 4. The company makes statement accordingly and is allowed deduction for such value of policies, and the other items mentioned, and is taxed on the balance of its total property remaining.

As a result of all this the question at issue takes this modified form: Does the deferred dividend fund, with its accretions, properly constitute a part of the total value of the policies to be ascertained by the commissioner? If yea, it is by statute made part of the liabilities on policies and becomes exempt. It is perhaps inaccurate to say that the fund itself is a liability. What we mean is that when the company in obedience to law ascertains the "amount of surplus to which all such (deferred dividend) policies as a class are entitled," and apportions such surplus to said class, and carries it with its earnings and accretions "as a distinct and separate liability" to that class, and is forbidden to use it for any other purpose, the obligation exists to pay that amount to that class at some time or other, as the units forming the class become entitled to their respective shares therein, and it is, of course, this obligation that constitutes the liability, and not the fund accumulated to meet it. But by statute and by the segregation of the assets the liability becomes precisely equal to the fund reserved to meet it, and in this respect differs from the general assets of the company, which are normally somewhat in excess of the estimated policy liability at large, and not its precise equivalent.

Now, it seems to us perfectly clear that when the deferred dividend policies as a class are entitled in any event except that of a universal catastrophe, to have divided among those meeting the necessary requirements this great sum of money,

their total value as straight policies, or policies without this feature is increased by precisely that amount. It is also clear, for the commissioner has by his report of values expressly so declared, that the "total net value" of $175,057,505 does not include the additional value conferred by the deferred dividend feature. We do not see how he could have made it plainer. This being so, the proposition seems indisputable that if the Prudential Insurance Company, on January 1st, 1911, had desired to go out of business and reinsure its risks, and had applied to another company to take them over, laying before it a statement similar to that of the Commissioner of Banking and Insurance now objected to, such other company would never consent to assume all the obligations on the policies unless assets sufficient to meet the deferred dividend item were included. And it should be remembered that the use of the commissioner's return of policy values for purposes of making up an assessment for taxation is merely an incidental use of a statement required for a far more important purpose, to wit, the safety of the policyholders. It is not the Tax act, but the Insurance act, which requires this ascertainment of values, as part of the state supervision of insurance companies. Under section 24 of the Insurance act, as originally enacted in 1872 (*Pamph. L., pp.* 8, 30), and re-enacted in 1902 (*Pamph. L., p.* 418), the commissioner is to "cause to be computed the value of such policies and bonds, or what is known as the re-insurance fund therefor" * * * (according to certain standards), "as he may deem best for the security of the business and the safety of the persons insured." These words are missing from the amended section of 1907, but the general purpose is manifest, and has always been so understood. And from this follows the somewhat startling proposition that this present application, made to settle the question of tax exemption, would, if granted, result in requiring the Commissioner of Banking and Insurance, in performing his duty of ascertaining the existence or non-existence of an adequate re-insurance fund and surplus, and in connection therewith the solvency or insolvency of the company as tested by a comparison of its assets with the net value of its outstanding poli-

cies and other liabilities, to omit from his valuation an item of twenty-three millions and over, certainly payable at some time, to policyholders now unascertained, but ultimately ascertainable.

It should be unnecessary to say more. Our conclusion is that the twenty-three million item is properly returned by the commissioner as forming part of the total policy values; that the ultimate obligation to pay that amount is a liability on policies; and the company is lawfully entitled to have it deducted as part of the liabilities on policies from the taxable valuation for 1911.

The rule to show cause will be discharged.