TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH IN NEWARK, PROSECUTOR, v. RICHARD MILLER ET AL., COMMISSIONERS OF THE BOARD OF EXCISE OF THE CITY OF NEWARK ET AL.

TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH IN NEWARK, PROSECUTOR, v. RICHARD MILLER ET AL., COMMISSIONERS OF THE BOARD OF EXCISE OF THE CITY OF NEWARK ET AL.

Argued November 6, 1913—Decided March 10, 1914.

Where a building has been used for years for retailing liquors under license granted annually, and the license is transferred elsewhere when the building is torn down to make way for a new building on its site, a part of which is designed for the resumption of such business and not used meanwhile for any other purpose, and upon the completion of the new building the license is transferred to it, and is later renewed, the new building is not a "new place" within the meaning of section 11 of the act of 1889, as amended in *Pamph. L.* 1906, *p.* 203 (3 *Comp. Stat.*, *p.* 2908, ¶ 84), and neither the transfer nor the license will be set aside on that theory.

On *certiorari.*

Before Justices GARRISON, TRENCHARD and MINTURN.

For the prosecutor, *William T. Carter, Jr.*

For the board of excise commissioners of the city of Newark, *Herbert Boggs.*

For the defendant Arthur E. Straube, *Pitney, Hardin & Skinner.*

The opinion of the court was delivered by

TRENCHARD, J. The writ in the first of these cases brings up for review the action of the board of excise commissioners

of the city of Newark, on April 11th, 1913, in granting to Arthur E. Straube a transfer of license to sell liquors from the building known as No. 292 Fifteenth avenue, in the city of Newark, to the building known as Nos. 788–794 Broad street, in the same city.

The writ in the second case brings up the action of the board, on August 29th, 1913, in granting to Straube a renewal of the license to sell liquors in the building known as Nos. 788–794 Broad street for one year, from September 1st, 1913, the license previously transferred to that address and brought up by the writ in case No. 1 having expired on September 1st, 1913.

The two cases have been argued together and both will be disposed of in this opinion.

The first reason assigned for setting aside the transfer and license is that the building on the premises known as Nos. 788–794 Broad street is a new place and within two hundred feet of the curtilage of the church edifice of the prosecutor, contrary to the provisions of section 11 of the act of 1889, as amended in *Pamph. L.* 1906, *p.* 203; *3 Comp. Stat., p.* 2908, ¶ 84.

The essential facts are these: The building known as Nos. 788–794 Broad street is also known as the Kinney Building, and is located at the southeast corner of Broad and Market streets. It is a large office building twelve stories in height. The erection of this building was begun in the spring of 1912, and it was completed and ready for occupancy about May 1st, 1913. The saloon occupied by Straube is located on the first floor.

To the south of the new Kinney Building, on Broad street, and separated from it by three other intervening buildings and a street, are the premises of the First Presbyterian Church.

Prior to the erection of the Kinney Building there were several independent buildings on that site, which have been removed. The most southerly of these was a building occupied by the Newark Star newspaper, known as No. 794 Broad street. To the north of the Star Building was another build-

ing known as No. 792 Broad street, on the first floor of which one Charles J. Charles conducted a cigar and liquor store. Charles had occupied these premises as tenant for many years, and had a license for his liquor business from the excise commissioners of the city of Newark. This license he caused to be transferred, on the vacation of the premises No. 792 Broad. street by him, to another place to which he removed his business, when obliged to leave the old stand by the tearing down of the building to make way for the new Kinney Building.

The owners of the property had no interest in the license, and nothing to say as to its transfer and in no way consented thereto. When the Kinney Building was approaching completion, Straube arranged with the owners of the building for a lease of a portion of the first floor for the purpose of conducting a cigar and liquor business similar to that which had been conducted at No. 792 Broad street by Charles.

The Bishops' act (3 *Comp. Stat., p.* 2908, ¶ 84, § 11) provides in part as follows:

"No license shall be granted to sell spirituous, vinous, malt or brewed liquors by less measure than one quart in any store, shop, apartment or place in which a grocery or other mercantile business (excepting the keeping of a restaurant, or the sale of tobacco and cigars by retail) is carried on, or in any new place within two hundred feet of the curtilage of a church edifice, school house or armory, measured between the nearest point of the same and nearest point of the building wherein such liquors, or any of them, are intended to be sold," &c.

In our view it is unnecessary for us to pass upon the disputed question whether the place in question is within two hundred feet of the curtilage of the church edifice of the prosecutor. It is unnecessary because we have reached the conclusion that the place in question is not a "new place" within the meaning of the statute.

The question of what constitutes a "new place" has been before this court in several recent cases, all of which support the view that this is not a "new place."

In *Eckersly* v. *Abbott,* 50 *Vroom* 157, it was held that where the different occupants of a house had been licensed continuously to keep an inn and tavern for a great many years, a cessation of the business for a period of one year, without a real and substantial abandonment of the business, would not make the place, when the liquor business was resumed therein, a "new place" within the meaning of the Bishops' act (*Pamph. L.* 1906, *p.* 199), and that for that reason the fact that the building licensed was within two hundred feet of the church of the prosecutor, could not affect the case. The interruption of the business in that case was due to a refusal to renew the license so that no application could thereafter be made until after the expiration of a year. At the earliest opportunity the occupant applied for and obtained a new license, which was thereupon sought to be set aside.

In *Parnes* v. *Board of Excise,* 53 *Vroom* 285, *Eckersly* v. *Abbott, supra,* was followed. There also there was an interruption of the business for a year because of a refusal to renew the license, which, however, was granted at the expiration of that period. The court said:

"The claim that it was a new place at the time the present license was granted must therefore rest on some abandonment or discontinuance of the former use, so that the premises lost their *status* as what is commonly called an 'old stand.' "

As a new application for license was made at the first opportunity, it was held that no intention to abandon the business was shown.

In *Londa* v. *Kling,* 54 *Vroom* 405, this court went still farther and held that where in the interim between the refusal to renew a license and the granting of a new license the owner made certain alterations and repairs in the building, there was no such abandonment of the business as to constitute the place a "new place."

It does not appear from the opinion how extensive the alterations were. It does appear, however, that the alterations and repairs were made with a view to a continuance of the business. So, too, in the present case, before the completion

of the Kinney Building, a portion of the first floor was assigned for continuing the liquor business formerly conducted on the site by Charles, and between April 11th, 1913, the date of the transfer of the license to Straube, which was about a month before the Kinney Building was completed, and June 30th, 1913, when notice was served of the application for a *certiorari* in the first of these cases, there was expended the sum of more than $15,000 in fitting up the premises for the conduct of the saloon business.

It further appeared in the Londa case that the property during the interim, which was from November, 1910, to March 26th, 1912, was put to no other or inconsistent use. This also is true in the present case.

We think the rule to be deduced from these authorities is this: Where, as here, a building has been used for years for retailing liquors under license granted annually, and the license is transferred elsewhere when the building is torn down to make way for a new building on its site, a part of which is designed for the resumption of such business and not used meanwhile for any other purpose, and upon the completion of the new building the license is transferred to it, and is later renewed, the new building is not a "new place" within the meaning of section 11 of the act of 1889, as amended in *Pamph. L.* 1906, *p.* 203 (3 *Comp. Stat., p.* 2908, ¶ 84), and neither the transfer nor the license will be set aside on that theory.

This conclusion, in effect, disposes of every question argued which we find presented by the proofs.

The writ in case No. 1, bringing up the transfer of license, will be dismissed, with costs, and the license brought up by writ No. 2 will be affirmed, with costs.